Manuel Benavides VOLPE, Appellant,

v.

Servando BENAVIDES et al., Appellees.

No. 3723.

Court of Civil Appeals of Texas.

Eastland.

June 1, 1962.

Rehearing Denied July 20, 1962.

Mann, Byfield & Castillon, Laredo, for appellant.

Hall & Hall, E. H. Borchers, Laredo, Neel & Seaman, Corpus Christi, R. T. Wilkinson, Jr., Houston, J. W. Cooper, Jr., Corpus Christi, for appellees.

GRISSOM, Chief Justice.

Servando Benavides, Sr., and his wife, Maria Volpe de Benavides, owned large tracts of land in Texas and Mexico. She died intestate in 1919. In 1921 one of their sons, Manuel Benavides Volpe, sued his father, brothers and sisters for a partition of said community estate in Texas, alleging he was entitled to ⅕th of his mother's ½ of said community estate. All defendants answered and, likewise, prayed for partition. Two of the 5 brothers and sisters were minors. They answered through their guardian ad litem alleging that each owned a ⅕th interest in said property, adopted the plaintiff's pleadings and prayed, as did all the parties, for a partition.

On March 23, 1923, the court rendered the first partition judgment which contained the following recitals:

"Second: That all of the personal property is susceptible of partition, and the whole of the real property of said estate is susceptible of partition as to the surface thereof, but the Court finds that it would be inequitable at this time to partition the oil, gas and mineral rights in and under said lands, for the reason that a great deal of explorations of said lands and adjoining lands for oil and gas is now being done, and it is impossible at this time to determine what would be a fair, equitable and just partition of the oil, gas and mineral rights under said lands, and the Court finds that all parties to this suit, including the Guardian Ad Litem for the minors, have agreed that the oil, gas and mineral rights and the leases, royalties and rentals therefrom shall be kept intact and administered together for a period of five years from this date, and placed in the hands of a Trustee, * * * to * * * manage and handle said oil, gas and mineral rights and all rents and royalties therefrom, and supervise the renting and collection of rentals and royalties therefrom, and to pay over each ninety days to the parties entitled thereto under this decree, their pro-rata share as hereinafter fixed. The said Trustee to have no power to sell royalties unless empowered to do so by this Court, upon application made for said purpose, and said Trustee * * * at any and all times to render to the beneficiaries of said trust statements as to all receipts and disbursements; the said Trustee to have full power to execute all documents and instruments necessary or convenient to lease and assign said oil, gas and mineral rights, and to make contracts with reference to royalties and rentals, therefrom, as fully as the owners of said oil, gas and mineral rights could do themselves * * *."

It contained a finding that Servando Benavides, Sr., was entitled to ½ and the five children were each entitled to a ⅒th of said community estate and that plaintiff had made a contract with some lawyers to convey to them ⅒th of the real estate set aside to him.

"Ninth: It is therefore, Ordered, adjudged and Decreed by the Court that the above described lands, excluding the oil, gas and mineral rights therein and under, and all said personal property be, and the same is hereby ordered and directed partitioned and distributed in the above shares among the plaintiff and defendants herein, as follows, to-wit: to Servando Benavides, one-half part and interest; to Manuel Benavides Volpe one-tenth part and interest, and out of which said share there shall be set aside in severalty, in equal shares, to A. C. Hamilton and S. T. Phelps, one-tenth of the realty set aside to said Manuel Benavides Volpe, and one-fourth of all personal property set aside to said Manuel Benavides Volpe; to Angelina B. de Longoria, one-tenth

part and interest; to Servando B. Volpe one-tenth part and interest; to Carlos B. Volpe one-tenth part and interest; and to Maria B. Volpe one-tenth part and interest.

"Tenth: It is further ordered, adjudged and decreed by the Court that the oil, gas and mineral rights, in upon and under all said lands, belonging to said community estate, shall be kept and held together for a period of five years from this date, unless sooner terminated by an order of this court, and the care, management, control and handling of said oil, gas and mineral rights in, upon and under said lands, are hereby placed in the hands of Sam W. Brown, Trustee * * *."

It provided that the trustee should have no power to sell royalty unless specially authorized by the court upon application for that purpose. It provided in Paragraph 10 that the trust in said minerals should exist for five years, but it contained a significant provision that at the expiration of the trust the minerals "shall revert to and become a part of the fee of the lands for which a partition is * * * ordered, and be owned by the parties who have the respective title and possession of said lands at the termination of this trust." It provided that if at the expiration of the five year term of the trust conditions as to exploration for oil justified it, the trust might be extended for three years "when such trust shall terminate and title to the said oil, gas and mineral rights shall vest in the then owners of the fee simple title to said lands." Commissioners to make partition of the land and personal property were then appointed. In their report they divided the land into six shares, one half of which was allotted to the father, as Share 6, and the other half was allotted as Shares 1 to 5, to the five children, respectively. The minerals were not specifically mentioned in said report.

On June 30, 1923, final judgment was rendered in the partition suit. It adopted the report of the commissioners, and contained the following provision:

"It is further ordered by the court that the title shall be, and is hereby vested in each party, to whom a share has been allotted, to such shares or portion of such property as is set apart to him or her by such commissioners in said report as against each of the other parties of this suit, his or her heirs, executors, administrators or assigns, as fully and effectually as the deed of such party or parties could vest the same, and this decree shall have the same force and effect as a full warranty deed of conveyance from such other parties and each of them."

Said second 1923 partition judgment recited that the preliminary decree placed the minerals in the hands of a trustee and fixed the share of the proceeds to which each party was entitled, but failed to declare the interest of plaintiff's attorneys in the minerals but that they were entitled to 1/4th of the minerals held by said trustee for plaintiff. The court then, significantly, decreed that said attorneys were vested with, subject to the terms of said trust, 1/4th of plaintiff's minerals and entitled to receive one-fourth of the proceeds from his minerals during the existence of the trust and that "at the expiration of said trust said interest shall be limited to the lands herein set aside and partitioned to the said Manuel Benavides Volpe."

In July, 1923, said attorneys reconveyed to the plaintiff. After a description of the land, the deed recited that it was the intention of the grantors to convey to Manuel Benavides Volpe all the right, title and interest in the minerals set apart to them by said judgment and to authorize the trustee to make all payments to appellant to which they were entitled during the existence of the trust and that "at the expiration thereof, the said Manuel Benavides Volpe shall have all lands which he may own at that time free from any right, title or interest of

the grantors, in and to the mineral rights thereunder."

In April, 1929, the same court entered an order continuing the trust until March, 1931. It recited that between the expiration date of said trust and the entry of said order continuing the trust that the trustee had distributed the proceeds of the minerals as provided in said decree, "with the consent and approval of all parties interested in the oil, gas and minerals in, upon and under said lands * * *"; that conditions relative to exploration for oil that existed in 1923, still continued, rendering it equitable that said trust be extended until March, 1931, "at which date this trust shall terminate and the title to the oil, gas and minerals in and under said lands shall vest separately in the then respective owners of the fee simple title to said lands as provided in the original decree."

In July, 1931, all of said parties executed an instrument conveying their interest in the minerals in trust for 10 more years. It recited that in the 1923 judgment "all real property" belonging to said community estate had been partitioned between the father and five children, subject to the terms of a trust covering the minerals. It recited that each had confidence in the trustee and desired that he continue in possession and control of the minerals and that unified control and management of the minerals should continue for 10 more years, unless sooner terminated by a majority in interest of the beneficiaries. They granted to the trustee all their right, title and interest in the minerals under said land, "including the respective tracts of land set apart respectively to the undersigned * * * by the terms of said decree, to which reference is hereby made for a full description of said real property constituting said community estate and partitioned as aforesaid, including all of the * * * minerals underlying said land * * *." It provided that the trustee should not sell royalty without the written consent of a majority in interest of the beneficiaries. It provided that the trust

might be terminated at any time by a majority in interest. It further provided that

"At the termination of said trust, whether by the expiration of said ten years or otherwise, the rights and interests herein conveyed by the respective grantors to the said trustee, shall automatically revert to and vest in the respective grantors, their heirs and assigns, and the leases and contracts then outstanding shall fall to and vest in the beneficiary or beneficiaries owning the oil, gas and mineral rights of the particular tract or tracts of land covered by the respective leases in the proportion in which the said oil, gas and mineral interest are owned and said trustee shall distribute to the beneficiaries as required hereunder any net returns belonging to said trust as may then remain in his hands, and this trust shall thereupon automatically close."

In February, 1941, all of said parties entered into another trust agreement. It recited that under the 1931 trust agreement Martin was trustee of the minerals underlying said land and also acted as agent for Servando Benavides, Sr., as guardian of the estate of his minor children, and that the guardian desired that said trust should be continued so that his wards would continue to receive during the life of the trust a share of the proceeds from oil produced from lands which they did not own, but which belonged to other parties to said trust agreement, and that there was then no present prospect that oil would be produced from said minors' lands,

"5. Whereas, it is agreed and understood between the parties hereto that the following parties are respectively the owners in severalty of the following respective tracts of land, including the oil, gas and other minerals, if any, underlying the same as follows:

"(a) That said minors, Evelyn Gloria Benavides and Carlos Eduardo Benavides, are the owners of the land described as Share No. 1 in the final de-

cree of the court dated June 30th, 1923 * * *;"

that Manuel Benavides Volpe was the owner of the land described as Share 2 in said 1923 judgment and that the others owned certain numbered shares described in the 1923 judgment. It provided that the trustee should continue during the existence of the trust to pay to the parties thereto, being the same persons that were parties to the 1923 partition judgments and the 1931 trust agreement, the proceeds of the sale of leases and minerals according to their interest in the land partitioned in 1923. The granting clause recited that they conveyed to the trustee "all of their right, title and interest, and the right, title and interest of each of them in and to all of the oil, gas or other minerals underlying the several tracts of land hereinabove described." The warranty clause reads as follows:

"Each of the grantors herein hereby binds himself or herself, his or her heirs and assigns to warrant and defend all and singular the title to the particular premises conveyed herein by him or her against the claim or claims of any and all persons whomsoever lawfully claiming the same or any part thereof, it being the purpose of each grantor to warrant the title only as to the minerals and mineral interest owned and conveyed herein by him or her respectively and not as to those conveyed or assigned by any other of the parties hereto."

Section 5 set out the share owned by each party as determined by the 1923 judgments. Section 10 was as follows:

"Other than the trustee, no party shall have any title to or interest in the minerals underlying any of the land hereinabove described other than the land heretofore owned by him or her severally as above set out in Section 5 hereof, and conveyed herein, except the right to receive his or her share of the net returns from the sale of the oil, gas and other minerals from the land con-

veyed and assigned by the grantors herein after the same shall have been produced by lessee and sold by the trustee as herein provided for."

Section 13 of the 1941 trust agreement was as follows:

"13. Each of said minors, upon arriving at his or her majority or upon being emancipated prior thereto, may either ratify or rescind this instrument, and in case the same is then ratified, he or she shall thereupon be bound by the terms hereof and shall be entitled to continue to receive his or her pro-rata share of the benefits thereafter accruing under the terms of this trust upon the same terms and to the same extent as if originally bound hereby. If, however, said minors or either of them shall fail to ratify this instrument at his or her majority, or upon being emancipated, he or she shall thereupon cease to be entitled to any part of the benefits thereafter accruing hereunder, except such as may have accrued or may thereafter accrue from leases covering the portion of the land described in Subsection (a) of Section 5 hereof; and any and all oil, gas and/or other mineral leases theretofore executed upon any of the land described in Subsection (a) of Section 5 hereof shall vest in and be owned by said minor or minors in proportion to their interest in the land above set out in Subsection (a) of Section 5 hereof * * *." (The land described in said Subsection (a) of Section 5 was share number 1 as fixed by the decree of partition in June, 1923, which share was therein allotted to said minors.)

Subdivision 25 of the 1941 trust agreement contained the following:

"All other conveyances and agreements heretofore executed by the undersigned or any of them to Albert Martin in trust, including the said trust instrument dated August 6th, 1931 are hereby terminated and the rights and

interest therein conveyed shall, upon the execution and delivery hereof revert to the grantors therein * * *."

At the termination of said 1941 trust extension agreement, no oil was being produced from Share 2, which had been partitioned to Manuel Benavides Volpe by the 1923 judgments. There was production from some other shares.

Manuel Benavides Volpe filed four suits, which were consolidated. He alleged that the minerals under Shares 1 to 5, allotted, respectively, to him and his brothers and sisters in the 1923 judgments, had never been partitioned and that he owned an undivided ⅕th interest in the minerals underlying all the land included in Shares 1 to 5, inclusive, as designated in said 1923 judgments; that the minerals underlying Share 6, which was in 1923 allotted to his father, was not in dispute; that all the parties recognized that the minerals underlying that share was owned by them as tenants in common by virtue of a devise from their father, Servando Benavides, Sr., who was then dead. Plaintiff alleged that the legal effect of the 1923 partition was to sever the minerals from the surface and leave them undivided; that the 1923 partition judgments were clear and unambiguous; that such judgments, as a matter of law, could not constitute an agreement to partition the minerals; that the minerals under Shares 1 to 5 were still owned in undivided interests as tenants in common, but by agreement they were put in trust; that the trust expired in March 1931, when the legal title to the respective undivided interest in the minerals reverted to them and merged with the equitable title owned by plaintiff and defendants; that upon termination of the trust in 1941 the respective undivided interests conveyed to the trustee would have then reverted to them "respectively, had it not been for the execution of the * * * 1941 trust deed"; that the court should decree that the legal effect of the 1941 trust agreement was to vest legal title to the respective undivided interests in the trustee and upon expiration thereof legal title to the respective undivided interests was to revert to them; that the legal effect of the 1941 trust agreement was merely to extend the 1931 trust and postpone reversion of legal title to the beneficiaries until its termination; that the 1941 trust expired in February, 1956, and that by its terms the legal title to the respective undivided interests of the beneficiaries reverted to them and merged with their equitable title thereto; that upon termination of the trust plaintiff thereby acquired the legal title to his undivided ⅕th interest in the minerals under all the land; that defendants contended that the minerals under Shares 1 to 5, inclusive, were partitioned by the 1923 judgments. He alleged that all parties to said judgments were parties to this suit. He prayed for judgment decreeing that the minerals under Shares 1 to 5, both inclusive, of the 1923 partition judgments had never been partitioned and that plaintiff owned an undivided ⅕th of the minerals under all of said shares. He alleged that the court should construe and declare that the legal effect of said judgments and trust agreements was to leave plaintiff owning an undivided ⅕th interest in the minerals under all said land.

The defendants contended that the minerals were partitioned by the 1923 judgments and the 1931 and 1941 trust agreements; that the 1923 judgments were res adjudicata and that plaintiff was estopped to contend that there had been no partition of the minerals.

All parties filed motions for summary judgments. They stipulated that there was no disputed issue of fact; that the minerals and the parties in this suit are the same as in the 1923 judgments. Plaintiff's motion was denied. The defendants' motions were granted and judgment was rendered for them. The plaintiff has appealed.

Appellant says that the only part of the 1923 preliminary decree of partition that is material here is the recital that it was inequitable at that time to partition the minerals because there was exploration for oil

and it was then impossible to determine what would be a fair partition of the minerals and that all the parties had agreed that the minerals should be kept intact and administered together by a trustee for 5 years, plus the recital that said land, excluding the minerals, was directed partitioned and distributed in stated shares. However, he quotes from said judgment the provision that at the expiration of the agreed trust the minerals should revert to and be owned by the parties who had the title to the respective shares and that the minerals should vest in the then owners of the fee simple title to said lands. Appellant also says that the 1929 judgment was material only in that it extended the trust for 3 years and that the only subsequent action of the court in the 1923 case was to approve the trustees' bonds.

Appellant says, in effect, that the 1931 trust agreement was, as held by the trial court, a mere extension of the trust. The beginning of said 1931 trust agreement recited that by final judgment in 1923 all real property belonging to said estate was partitioned between the surviving father and five children, subject to the terms of a trust covering the minerals, which trust was created for their benefit, and it was recited therein that the guardian of the minor children desired that the trust continue so that they might continue to receive, during the trust, a share of proceeds of the minerals "whether produced from their land or not."

Appellant says that, because of the finding in the 1923 preliminary partition decree that the minerals were then incapable of being partitioned in kind, the court did not have the power to partition the minerals, either then or in the future, and, if the 1923 judgments were construed as partitioning the minerals they were void for want of power to partition the minerals in kind; that, in the absence of an agreement not to partition, the court had no alternative but to partition the minerals along with the surface, either in kind or by sale; that the 1923 judgments may be collaterally at-

tacked, even though the court had jurisdiction of the parties and subject matter, because it did not have the power to grant such relief, that is, having found that a fair and equitable division of the minerals in kind could not then be made, the court did not have the power to partition the minerals in kind. Appellant contends that when the court so found it lost jurisdiction to partition the minerals in kind, either presently or in the future, without a subsequent finding that the minerals were then capable of partition in kind. He says that an agreement not to partition is shown by the agreement to place the minerals in trust and, therefore, the judgments must be construed as having left the minerals undivided.

Appellant says that the only possible construction of the preliminary partition decree of 1923, so that it will be valid, is to construe it as leaving the minerals undivided by virtue of the agreement to put the minerals in a trust, which constituted an implied agreement not to partition the minerals; that if the 1923 preliminary partition decree is valid, so far as the minerals are concerned, it was not a final judgment and, further, that the 1931 and 1941 trust agreements were, as held by the trial court, merely extensions of the original trust created in 1923 and that the recitals in the 1941 trust agreement should be disregarded because same were obviously inserted under the erroneous belief that the 1923 judgments partitioned the minerals; that the only purpose of the 1941 trust agreement was to extend the trust and that the allegedly erroneous recitals that the minerals were partitioned in 1923 must be disregarded, because this is not a suit on the 1931 or 1941 trust agreements; that said trust agreements did not affect the legal status of the minerals and that the sole purpose of their execution was to extend the terms of the trust.

Appellees call special attention to the fact that the 1923 partition judgments recite that the minerals were placed in trust by agreement of all the owners; that the 1923 pre-

liminary decree provided that at the end of five years the minerals should revert to and become part of the fee of the lands "and be owned by the parties who have the respective title and possession of the lands at the termination of this trust" and that, if the trust should be extended for three years, that at the end of three years the trust should terminate and "title to the said oil, gas and mineral rights shall vest in the then owners of the fee simple title to said lands"; that the final partition decree of 1923 recited that the preliminary decree failed to declare the interest of appellant's lawyers in the minerals and that, therefore, it was adjudged that, subject to the trust, they were vested with ¼th of appellant's minerals and that at the expiration of the trust said attorneys' interest in the minerals "shall be limited to the lands herein set aside and partitioned to the said Manuel Benavides Volpe", that is, to Share 2; that the 1929 order extending the trust for three years referred to the provision in the 1923 preliminary decree that the court might extend the trust for three years and that at the end thereof the minerals should "then vest in the then respective owners of the fee simple title to said lands" and that said 1929 order extending the trust until March, 1931, also provided that in March, 1931, the title to the minerals should "vest separately in the then respective owners of the fee simple title to said lands as provided in the original decree." Appellees say that the provisions of the 1923 partition judgments are clear; that they operated to sever the minerals from the surface by creation of an agreed trust vesting the legal title and possession of the minerals temporarily in a trustee, but putting the equitable ownership of the minerals in the respective owners of each allotted share and providing that at expiration of the trust the legal title and the possession of the minerals should vest in the owners of the surface under whose lands the minerals lay, to whom the equitable ownership had previously been partitioned in severalty. They say that such construction is necessitated and emphasized by the finding in the 1923 final partition

judgment that the preliminary decree had not fixed the interest of appellant's attorneys in the minerals and by the fact that the court expressly corrected that oversight by providing that at the expiration of the trust said attorneys' mineral interest should be "limited to the lands herein set aside and partitioned to the said Manuel Benavides Volpe"; that had it been the intention to leave the minerals unpartitioned this language would not have been used and it would have violated the contract between appellant and his lawyers because, if the minerals had not been partitioned, the lawyers would have owned an interest in the minerals under all the land; that by placing the minerals in trust by agreement of the owners, the court severed them from the surface and provided that upon termination of the trust the minerals would revert to and become a part of the fee of the respective allotted shares and that the only construction that could be given the language was that the respective owners of the surface in severalty became the owners of the minerals underlying the share that was by said 1923 judgments allotted to him; that, if appellant's interpretation should be adopted, that is, that the minerals continued to be owned in undivided interest under all the land, that at the end of the trust they could not have reverted to and become a part of each allotted share "and be owned by the parties who have the respective title and possession of said lands" but that each party's undivided mineral interest would have continued to be throughout all the land. We agree with appellees' said contentions.

Appellees contest appellant's statement that the court in the 1923 preliminary decree found that the minerals were incapable of being partitioned in kind. They point out that the exact language used was "that it would be inequitable at this time to partition the * * * minerals" because of explorations then being made for oil and that it was impossible then to determine what would be a fair partition of the minerals. Appellees say it is obvious that in the 1923 judgments and the 1929 order ex-

tending the trust the court did not find that the minerals were incapable of being equitably partitioned in kind, but merely that it didn't then have the information available to determine what would be a fair partition. However, appellees contend that, even if a conflict exists between such finding and the judgment partitioning the minerals in kind,' such finding could not destroy the judgment and that the judgment is conclusive that the minerals were, in fact, partitioned. They say that the record does not disclose on its face that the partition was unfair and, even if construed as appellant does, that the judgment partitioning the minerals was not subject to collateral attack and, at most, disclosed an irregularity which had to be challenged by appeal, which was not done; that it should be assumed that, because it was not then known in what part of the estate the minerals, if any, were located, that to, at least, partially avoid what might eventually prove to be an uneven distribution of the minerals that the parties and the court, by agreement, adopted the trust device to permit a sharing of the hoped for revenues from leasing and production during the existence of the trust and that the 1923 judgments were agreed judgments. In support of this last contention they cite Frazier v. Hanlon Gasoline Company, Tex.Civ.App., 29 S.W.2d 461, 469 (Writ Ref.), where it was held that a judgment in a partition suit from which there was no appeal should be considered as an agreed judgment. Appellees say that under the authority of the Frazier case and Laird v. Gulf Production Company, Tex.Civ.App., 64 S.W.2d 1080 (Writ Dis.), the court had the power to partition the minerals under equitable rules, under statutory provisions or to blend the two; that the court had the power to make an equitable partition of the minerals and appellant's only remedy was to appeal and that the 1923 judgments are not subject to collateral attack.

Appellees say it is evident that the 1941 trust agreement operated to partition the minerals; that this is manifested by the recital therein that the parties were, respectively, the owners in severalty of the respective shares, including the minerals underlying same, and that each grantor bound himself to defend the title to only the particular premises conveyed by him and that it was the purpose of each grantor to warrant the title only as to the minerals owned and conveyed by him and not as to those owned and conveyed by any other party thereto. They say it is evident that when appellant executed the 1941 trust agreement he claimed to own the minerals under the share allotted to him in 1923 and agreed that the others owned the minerals under their shares. We agree with this contention. In support of this contention they cite Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626. Appellees further say that appellant is estopped by said deed to claim that he owns minerals under the tracts allotted to others.

All parties prayed for a partition of all of said estate. It was stipulated that the parties and the minerals involved here are the same as in the 1923 judgments. It was agreed that there was no issue of fact. All parties filed motions for a summary judgment.

From the entire record it is evident that the minerals were partitioned in 1923 and placed in trust by agreement of all the parties and that such partition was recognized by all the parties at all times thereafter. However, had there been no partition prior to the execution of the 1941 trust agreement it, alone, would have effected a partition of the minerals, locating the interest of each within the boundaries of the share allotted to him in the 1923 judgments.

The record shows that in 1923 the parties realized there might soon be leasing or production of oil on some of the shares while others might be non-productive. Evidently there was then no production on any part of the estate. The court might have assumed that the minerals under each share was of equal value. Although all interests in the estate were partitioned, because of the

possibility that some might be allotted land that would soon be leased or produce oil while that allotted to others might not, it was agreed that all minerals should be put in trust so that during the trust all would share equally in income from leasing or production on any part of the estate. Such conclusion is required by all the record, including the following: Provision in the 1923 preliminary partition judgment that upon termination of the agreed trust that the minerals should vest in the owners of the fee simple title to said lands, that is, become a part of the respective share allotments. Had there been no partition of the minerals, termination of the trust would not have caused the minerals under a particular share to vest in its owner but each would have continued to own an undivided interest in the minerals under all of the shares. The second 1923 partition judgment provided that appellant's lawyers were then vested with a ¼th interest in appellant's minerals, subject to the trust, but that, upon termination of the trust, their interest in the minerals should be limited to Share 2, which was partitioned and allotted to appellant. If the minerals had not been partitioned, appellant's lawyers, upon termination of the trust, would have owned an undivided interest in the minerals under all the shares and the court could not have limited their mineral interest to the specific tract allotted to appellant. If there had been no partition of the minerals in 1923 the same court that rendered the 1923 partition judgments could not have in 1929 provided, as it did, that when the trust terminated in 1931 title to the minerals should vest separately in the owners of the respective shares, because, absent partition of the minerals, their interest in the minerals would have continued to be in all the shares. But for the 1923 partition of the minerals the court could not have found, as it did, that the guardian of the minor children wanted the trust extended so that his wards could continue to receive during the term of the trust a share of the proceeds of leases and oil produced from any of the shares. Had there been no partition of the miner-

als the minor children would have continued to share in the proceeds of minerals from all parts of the estate without a continuation of the trust. Had there been no partition of the minerals in 1923, the trust agreement signed by all the parties in 1931 could not have recited in its preliminary paragraph, as it did, that by final decree in 1923 the court partitioned all the real property of said community estate between the father and five children, nor that

"At the termination of said trust * * * the rights and interests herein conveyed by the respective grantors to the said trustee, shall automatically revert to and vest in the respective grantors, their heirs and assigns, and the leases and contracts then outstanding shall fall to and vest in the beneficiary or beneficiaries owning the oil, gas and mineral rights of the particular tract or tracts of land covered by the respective leases * * *."

Had there been no partition of the minerals in 1923 the parties to the 1941 trust agreement, in referring to the shares allotted to each by the 1923 judgments, would not have stated therein that

"* * * it is agreed and understood between the parties hereto that the following parties are respectively the owners in severalty of the following respective tracts of land, including the oil, gas and other minerals, if any, underlying the same * * *";

nor that they did thereby "GRANT, SELL, CONVEY, ASSIGN AND SET OVER unto the said * * * Trustee * * * all of their right, title and interest, and the right, title and interest of each of them in and to all of the oil, gas or other minerals underlying the several tracts of land hereinabove described * * *", nor the following in their warranty:

"Each of the grantors herein hereby binds himself or herself, his or her heirs and assigns to warrant and defend all and singular the title to the particular

premises conveyed herein by him or her against the claim or claims of any and all persons whomsoever lawfully claiming the same or any part thereof, it being the purpose of each grantor to warrant the title only as to the minerals and mineral interest owned and conveyed herein by him or her respectively and not as to those conveyed or assigned by any other of the parties hereto.",

nor the following provisions in paragraphs 10 and 13:

"10. Other than the trustee, no party shall have any title to or interest in the minerals underlying any of the land hereinabove described other than the land heretofore owned by him or her severally as above set out in Section 5 hereof, and conveyed herein, except the right to receive his or her share of the net returns from the sale of the oil, gas and other minerals from the land conveyed and assigned by the grantors herein after the same shall have been produced by lessee and sold by the trustee as herein provided for.

 *  *  *  *  *  *

"13. Each of said minors, upon arriving at his or her majority or upon being emancipated prior thereto, may either ratify or rescind this instrument, and in case the same is then ratified, he or she shall thereupon be bound by the terms hereof and shall be entitled to continue to receive his or her pro-rata share of the benefits thereafter accruing under the terms of this trust upon the same terms and to the same extent as if originally bound hereby. If, however, said minors or either of them shall fail to ratify this instrument at his or her majority, or upon being emancipated, he or she shall thereupon cease to be entitled to any part of the benefits thereafter accruing hereunder, except such as may have accrued or may thereafter accrue from leases covering the portion of the land described in Subsection (a) of Section 5 hereof; and any and all oil, gas and/or other

mineral leases theretofore executed upon any of the land described in Subsection (a) of Section 5 hereof shall vest in and be owned by said minor or minors in proportion to their interest in the land above set out in Subsection (a) of Section 5 hereof * * *." (The land described in Subsection (a) of Section 5 was allotted to the minors in the 1923 judgments.)

All of appellant's points have been considered and are overruled. We conclude that the minerals have been partitioned and that each party owns the minerals in the share allotted to him by the 1923 judgments. The judgment is affirmed.